Eastern District of Kentucky
**F I L E D**

OCT 12 2005

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 04-545-GWU

JERRY MASTERS,                                          PLAINTIFF,

VS.                        **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                        DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Masters

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

Masters

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an
> underlying medical condition. If there is, we then examine: (1)

3

Masters

whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Masters

or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

## DISCUSSION

The plaintiff, Jerry Masters, a 57-year-old man with an eighth-grade education, filed an application for DIB on October 1, 2001, alleging disability beginning January 1, 2001 due to heart problems, shortness of breath, high blood pressure, and difficulty using his arms. (Tr. 58, 101-3,189-90). After his application was denied initially and on reconsideration, he requested and received a review before an Administrative Law Judge (ALJ), who issued a decision dated May 28, 2004 finding that Mr. Masters <u>had</u> been engaging in "substantial gainful activity" after his alleged onset date, and had "not been unable to engage in substantial gainful activity for any continuous period of at least 12 months." (Tr. 16). Thus, the ALJ terminated the sequential evaluation at Step One, and, accordingly, found that Mr. Masters was not entitled to benefits. The Appeals Council declined to review, and this action followed.

For the reasons set out below, the Court concludes that substantial evidence supports the ALJ's determination.

Substantial work activity is defined by the Commissioner's regulations as "work activity that involves doing significant physical or mental activities," while gainful work activity is defined as "work activity that [is done] for pay or profit." 20

5

Masters

C.F.R. Sections 404.1572(a); 404.1572(b) (2004).  If the work requires a claimant to use "experience, skills, supervision, and responsibilities," or will "contribute substantially to the operation of the business, this tends to show that . . .[the] work [is] . . . substantial gainful activity." Id.  However, if the work involves "minimal duties that [make] little or no demands on [the claimant] and that are of little or no use to [the] employer, or to the operation of the business if [the claimant is] self-employed," this shows that the work is not substantial gainful activity.  20 C.F.R. Section 404.1573(b).

The ALJ partially based his decision on Mr. Masters' tax returns, and partly on Mr. Masters' own testimony.

The plaintiff testified that he owned a one-ninth share in House-Rawlings Funeral Home, and had received fees both as a director and as a "greeter" in 2001 and 2002, but had been unable to work as a greeter for two years prior to the March 16, 2004 administrative hearing.  (Tr. 30-2, 36).[1]  He had turned his share of the funeral home stock over to his wife two years earlier, as well, although no specific date was given.  (Tr. 30). He explained that the job of greeter was to meet people at the door during a funeral, which required standing for five to seven hours a day, and, although his wife was now performing this job, on occasion "I've went to the

---

[1]The plaintiff stated that he had never been involved in embalming.  "I've never been in that room.  I can't.  I don't like it."  (Tr. 34).

Masters

funeral home and sat down." (Tr. 32, 36).  His wife had assumed his former position as a director of the funeral home, and he conceded that she would ask for his opinion about board business, but in the end "it's her decision."  (Tr. 38).  Mr. Masters testified that his other job had involved owning and operating Jerry's Auto Sales, a used car lot, for 20 years, but this had also been put in his wife's name and she was operating it primarily to sell used travel trailers. (Tr. 39).  He was somewhat vague about when the transfer had taken place, but admitted operating the business in the year 2000, although he also claimed that he had not been to a used car auction for the previous seven years.  (Tr. 42-3).  His son operated a business selling race car parts and he would occasionally give his son advice on building race car motors. (Tr. 59). His wife was also employed full-time as a teacher's aide and school bus driver, had a used furniture business connected to their house, and did "title work" at auto auctions on Tuesday and Friday evenings.  (Tr. 39, 41, 43, 45).

As the Commissioner points out, the plaintiff's own testimony establishes that he was engaging in substantial gainful activity in 2001 and 2002, after his alleged onset date, and this portion of the ALJ's decision is clearly supported by the plaintiff's testimony alone.

The regulations also provide for a presumptive finding of substantial gainful activity based on earnings.

7

Masters


Joint tax returns for Mr. and Mrs. Masters showed that Mr. Masters received $8,750 income from House Rawlings Funeral Home in calendar year 2001, and $1,500 in 2002. (Tr. 139, 153). He also received $6,500 in director's fees in 2001. (Tr. 139). For 2003, Mrs. Masters received director's fees and $3,000 wages from House-Rawlings, and Mr. Masters apparently received nothing. (Tr. 171-2). The ALJ also found that the change in directorship at the funeral home in late 2002 was taken to divert the income away from Mr. Masters and that, while his level of physical activity "may" have declined, he remained involved mentally, as illustrated by the testimony that his wife would seek his opinion before making business decisions. (Tr. 15). While this could be a reasonable interpretation of the evidence, it is crystal clear that Mr. Masters engaged in substantial gainful activity in the funeral home through at least 2002.

Mr. Masters was listed on tax returns for 2001 and 2002 as the owner of Jerry's Auto Sales, which had "gross receipts or sales" of $27,250 in 2001 and $16,150 in 2002. (Tr. 143, 148). He was still listed as the proprietor of "Jerry's Auto Sales and Travel Trailers" on the 2003 tax return, which had "gross receipts or sales" of $25,200, although the business ended up with a reported loss of $1,874. (Tr. 176). On their face, then, the plaintiff's tax returns show that he was the proprietor of Jerry's Auto Sales, and it was transacting a significant amount of business through calendar year 2003, although it may not have been profitable. Mr. and Mrs. Masters

8

Masters

both testified that the sales of travel trailers was small, perhaps 10 per year, and that Mrs. Masters was able to handle the business while she was not working elsewhere (Tr. 39, 67-8), but the tax returns do not reflect that the business was in Mrs. Masters' name for the previous three years as she claimed (Tr. 68).  The ALJ was skeptical that Mrs. Masters, who had a full-time job, as well a part-time job and her own furniture business, was able to take over all of Mr. Masters' former activity at both the funeral home and the used car lot while continuing with her own activities, a conclusion that has at least a reasonable basis.

The decision will be affirmed.

This the ___12___ day of October, 2005.

G. WIX UNTHANK
SENIOR JUDGE